**IN THE UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| Lona Fowdur | * |
| 1256 New Bedford Lane | |
| Reston, Virginia 20194 | * |
| | |
|     Plaintiff, | * |
| | |
| vs. | *        **Jury Trial Demanded** |
| | |
| Secretariat Advisors, LLC. | * |
| 1175 Peachtree Street NE, | |
| 100 Colony Square, Suite 400 | * |
| Atlanta, Georgia 30361 | |
| | * |
|    Serve on: | |
|       CT Corporation System | * |
|       Resident Agent | |
|       1015 15th Street, NW, Suite 1000 | * |
|       Washington, D.C.  20005 | |
| | * |
| Donald Harvey | |
| 2000 Linger Longer Dr. | * |
| Greensboro, GA. 30642 | |
| | * |
| John Little | |
| 3985 Northside Dr. NW | * |
| Atlanta GA. 30342 | |
| | * |
|     Defendants. | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Plaintiff Lona Fowdur ("Dr. Fowdur" or "Plaintiff"), by and through counsel, hereby moves this Court for judgment against Defendants Secretariat Advisors, LLC ("Secretariat" or "Defendant Secretariat"), Donald Harvey ("Harvey" or "Defendant Harvey"), and John Little ("Little" or "Defendant Little") (collectively "Defendants") for violation of the District of Columbia Wage Payment and Collection Law (D.C. Code Ann. § 32-1303 *et seq.* ("DCWPCL")),

Breach of Contract, Unjust Enrichment, Promissory Estoppel, and in support thereof, states as follows:

## I.    PARTIES

1.      Plaintiff Lona Fowdur resides at 1256 New Bedford Lane, Reston, Virginia 20194, and is a citizen and resident of the Commonwealth of Virginia.

2.      Dr. Fowdur performed work for Secretariat in Washington, D.C. at Secretariat's offices located at 2121 K Street, NW, Suite 1100, Washington, DC 20037 and 1200 New Hampshire Avenue, NW, Suite 400, Washington, DC, 20036 from 2009 until her resignation on May 31, 2023.

3.      At all times relevant herein, Dr. Fowdur worked more than 50 percent of her hours within the District of Columbia and was an employee of Secretariat within the meaning of the DCWPCL.

4.      Defendant Secretariat Advisors, LLC is a Delaware corporation with its principal place of business in Atlanta, Georgia.

5.      Defendant Secretariat is a portfolio company of JLL Partners, a private equity firm which has its principal place of business in New York, New York.

6.      Defendant Secretariat is registered to conduct business in the District of Columbia.

7.      Secretariat is and at all times mentioned herein was an employer within the meaning the DCWPCL.

8.      Defendant Harvey is the Chief Executive Officer ("CEO") for Defendant Secretariat and was, at all times relevant to the Counts asserted herein, Dr. Fowdur's employer as defined by the DCWPCL and as construed under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

9.      Defendant Little is the Chief Financial Officer ("CFO") for Defendant Secretariat and was, at all times relevant to the Counts asserted herein, Dr. Fowdur's employer as defined by the DCWPCL and as construed under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

## II.      JURISDICTION

10.      This Court has jurisdiction over the instant dispute pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and there is complete diversity between the parties.

11.      Venue lies in this District, as the acts complained of herein occurred within this District.

## III.      FACTS GIVING RISE TO RELIEF

12.      Dr. Fowdur started her employment with Economists Incorporated ("EI") in June 2009.  Secretariat acquired EI in July 2021, and renamed the entity "Secretariat Economists."

13.      Dr. Fowdur did not have a written employment contract with EI or Secretariat at any time.

14.      Economists Incorporated promised Dr. Fowdur certain amounts of compensation in exchange for her services to the company and its clients.  Those promises did not contain any caveats that earned compensation would not be paid to separating employees.

15.      Dr. Fowdur performed all such services to EI and its clients in an exceptional manner.

16.      In December 2016, EI promoted Dr. Fowdur to Vice President, effective January 1, 2017.

17.      David Argue ("Dr. Argue"), then Principal and Corporate Vice President of EI, stated via email to Ms. Fowdur that upon her promotion to Vice President, "[y]our formula for

cases that you bring in will pay you 60% of the revenue collected for your own hours and 10% of the revenue collected for all other individuals' hours that are not separately carved out with a lead-sharing arrangement." This established formula dictated the terms of Dr. Fowdur's compensation going forward and was non-discretionary.

18.     The same email separately explained that Dr. Fowdur would be given a one-time discretionary bonus of 10% of the revenue collected for Dr. Fowdur's hours already worked on a specific matter in her pre-promotion role.

19.     With respect to that one-time discretionary bonus, Dr. Argue stated that "as with all bonuses, you must be employed at EI at the time the bonus is to be paid to be eligible for it."

20.     Dr. Argue's email to Dr. Fowdur did not state that Dr. Fowdur would need to be employed to receive any non-discretionary, non-bonus compensation that she had earned per the terms of her formula.

21.     The discretionary bonus described in the email pertained to her prior role, was not earned under a formula, and was not promised before Dr. Fowdur began work on the specific matter in question.

22.     After her 2016 promotion to Vice President and establishment of a formula for compensation, EI began paying Dr. Fowdur in quarterly amounts according to the formula outlined in Dr. Argue's email.

23.     Prior to each quarterly payment, EI sent Dr. Fowdur a calculation of the formula in order for her to review the calculation for accuracy prior to issuance of payment.

24.     Dr. Fowdur also received a bi-monthly amount referred to as a "draw." The amount she received as a "draw" each quarter was then subtracted from her formula-based compensation to determine a "true-up" amount to be paid every quarter.

4

25.     There was no part of Dr. Fowdur's formula-based compensation that was discretionary.

26.     Effective January 1, 2018, Dr. Fowdur was promoted to Senior Vice President, and her compensation formula changed to reflect that promotion.  At that time, EI did not notify Dr. Fowdur of any requirement to forfeit compensation earned under the terms of her formula if she resigned prior to payment.

27.     Effective January 1, 2020, Dr. Fowdur was promoted to the position of Principal.

28.     In an email from Matt Wright ("Dr. Wright") to Dr. Fowdur in advance of the January 1, 2020 effective date of her promotion, Dr. Wright summarized the terms and conditions of Dr. Fowdur's employment subsequent to the promotion.

29.     In that email summarizing the terms and conditions of Dr. Fowdur's employment as of January 1, 2020, Economists Incorporated referenced a new payment formula applicable to Dr. Fowdur's role as Principal.

30.     That formula states, "Effective January 1, 2020, your new formula will be 60% of your own collected billings, and 40% of collected billings of support people (VPs and below) who work on cases you lead."

31.     That formula contained no discretionary components, and the communication contained no stipulations regarding forfeiture of income earned under the formula upon separation.

32.     In August 2020, Dr. Fowdur's compensation was modified again without any statement that her formula-based compensation would only be paid to current employees.

33.     In an email from Dr. Wright to Dr. Fowdur dated August 22, 2020, Dr. Wright informed Dr. Fowdur that effective the fourth quarter of 2020, Dr. Fowdur would "receive 20% of

the collected billings of Senior Vice Presidents who do support work on cases you lead.  All other terms of your formula remain unchanged."

34.     In May 2021, EI management, including Dr. Argue, Dr. Wright and Dr. Jonathan Walker, informed Dr. Fowdur and other employees of EI management's intention to sell EI to Secretariat.

35.     Prior to consummation of the acquisition, Secretariat Advisors, LLC, drafted a new employment agreement for Dr. Fowdur.

36.     EI Principal and Corporate Vice President Jonathan Walker ("Dr. Walker") sent the draft employment agreement to Dr. Fowdur on May 27, 2021.

37.     Upon information and belief, other Principals also received some form of the same draft employment agreement.

38.     Section 3.4(b) of the draft employment agreement refers to quarterly compensation payments as "bonuses" and states that such bonuses "shall be conditional upon Employee being actively employed by the Company and not serving notice pursuant to Section 7.2(a)(ii) prior to the last day of the applicable quarter."

39.     The agreement provided new restrictive covenants upon separation, as well as monetary considerations in exchange for acceptance of the terms of the draft employment agreement.

40.     Dr. Fowdur declined to sign this agreement because it would have made several unfavorable changes to her compensation structure, including those contained in Section 3.4(b) regarding the forfeiture of her quarterly formula-based compensation if she were not actively employed when such payment was due.

41.     Dr. Fowdur explicitly rejected any proposed restrictions on payments of her earned formula-based compensation or any other restrictive covenants that did not previously apply to her.

42.     Based on Dr. Fowdur's conversations with her colleagues, she is aware, and expects to substantiate further through discovery, that other Principals similarly rejected their draft contract terms and negotiated individualized post-acquisition agreements with Secretariat.

43.     On or about July 1, 2021, Secretariat Advisors, LLC, acquired Economists Incorporated.

44.     Upon Secretariat's acquisition of EI, Defendant Harvey, CEO of Secretariat, and Defendant Little, Secretariat CFO, became persons acting directly in the interest of Secretariat in relation to Secretariat's employee, Dr. Fowdur.

45.     Upon Secretariat's acquisition of EI, Defendant Harvey had hiring and firing authority at Secretariat and over Dr. Fowdur.

46.     Upon Secretariat's acquisition of EI, Defendant Harvey participated in supervising the conditions of Dr. Fowdur's employment.

47.     Upon Secretariat's acquisition of EI, Defendant Little determined the rates of payment for separating Secretariat employees.

48.     Secretariat was aware of Dr. Fowdur's rejection of the modified contract language and her rejection of any included provisions that earned compensation would not be paid if she were not actively employed when such payment was due.

49.     Upon information and belief, both Defendant Harvey and Defendant Little were aware of Dr. Fowdur's rejection of the modified contract language and her rejection of any

included provisions that earned compensation would not be paid if she were not actively employed when such payment was due.

50.     Dr. Walker observed in his email of May 27, 2021 that "[b]ased on your talks with Matt and Dave, I assume that the offer [of the amended contractual terms] is a nonstarter for you," indicating that EI management (as this was prior to the Secretariat acquisition of EI) was well aware that the contract contained terms that Dr. Fowdur found to be unacceptable.

51.     Despite Defendants' knowledge of Dr. Fowdur's rejection of its proposed contract provision that attempted to impose conditions of active employment on payment of her earned compensation, and Dr. Fowdur's similar rejection of other restrictive covenants, Secretariat continued Dr. Fowdur's employment without asking for her acceptance of any new policy as a condition of her employment.

52.     For Dr. Fowdur's earned compensation through December 31, 2022, Secretariat continued to pay Dr. Fowdur according to the formula previously outlined in Dr. Wright's emails of December 27, 2019, and August 22, 2020, without amending any policy or terms related to her compensation.  Secretariat made the last such payment in March 2023, covering the last quarter of 2022.

53.     Dr. Fowdur voluntarily resigned on May 17, 2023, with an intended final day of employment of May 31, 2023. Dr. Fowdur continued to work at Secretariat through May 31, 2023, and Secretariat billed Dr. Fowdur's clients for work she performed through those dates.

54.     On May 18, 2023, Defendant Harvey stated in a message to Dr. Fowdur about the new opportunity she was pursuing, "If the opportunity turns out to be less than what was sold to you, you always have a place to come back to."

55.     Around the time of Dr. Fowdur's departure, Secretariat sought and obtained acknowledgements of payment obligations from all of Dr. Fowdur's clients for outstanding invoices.

56.     In June 2023, Dr. Fowdur spoke with Defendant Little regarding her unpaid compensation for January 1, 2023, through May 31, 2023.

57.     In that conversation, Defendant Little did not mention any policy that would permit Secretariat to withhold compensation payments from Dr. Fowdur, but rather stated that he was aware that Dr. Fowdur did not have an employment contract, and specifically, that he was aware that Dr. Fowdur did not have a contract with a forfeiture clause for unpaid compensation.

58.     Upon information and belief, Defendant Harvey was aware of the conversations between Dr. Fowdur and Defendant Little and further aware that Dr. Fowdur did not have a contract with a forfeiture clause for unpaid compensation.

59.     The compensation formula applicable to Dr. Fowdur's position as Principal required Secretariat to provide compensation to Dr. Fowdur based on Dr. Fowdur's collected billings and collected billings of persons providing work on cases Dr. Fowdur led.

60.     Those amounts paid to Dr. Fowdur based on collected billings of other individuals were paid quarterly to Dr. Fowdur per the same formula from the time Dr. Fowdur was elevated to the position of Principal until such time as the period of January 1, 2023, through May 31, 2023 detailed in Paragraph 53, herein.

61.     The only amendment made to Dr. Fowdur's formula pertained to her retention of an additional 20% on the hours of employees at the Senior Vice President level.

62.     On or before June 30, 2023, one month following Dr. Fowdur's resignation, Dr. Fowdur was to have been paid an amount in excess of $300,000 based solely on the collected

billings of those working on cases she led or co-led for the period from January 1, 2023, through March 31, 2023, per the terms of her compensation formula.

63.     Despite the fact that Defendant Little knew that there were no contractual agreements between Dr. Fowdur and Secretariat allowing Secretariat to withhold payment, and despite Defendant Harvey's May 18 message implying that Secretariat was a place where employees would receive what was promised (see ¶ 54 supra), Dr. Fowdur was not paid the amount due to her on or before June 30, 2023.

64.     On or before September 30, 2023, Dr. Fowdur was to have been paid an additional amount in excess of $340,000 based on the collected billings of those working on cases she led or co-led for the period from April 1, 2023, through May 31, 2023, again per the terms of her compensation formula.

65.     On July 3, 2023, Dr. Fowdur emailed Defendant Little and Dr. Wright explaining that she had not received the compensation owing on June 30, 2023, asking when that amount and the amount owing in September 2023 would be paid, and requesting a response by close of business on July 5, 2023.

66.     Upon information and belief, Defendant Harvey was aware of Dr. Fowdur's email and involved in any decisions to respond or not to respond to her request for payment of unpaid wages.

67.     When she did not receive a response to her request, Dr. Fowdur, through counsel, on the morning of July 11, 2023, issued a written demand to the company (addressed to Defendants Harvey and Little), for payment of the amount owed in June 2023 and demanding assurances that the September payment would be made on time.

68.    On the evening of July 12, 2023, Defendant Little emailed Dr. Fowdur and stated

that she was not eligible for 2023 Q1 or Q2 payments:

> Quarterly bonus payments are not considered earned and payable until all
> conditions for payment are satisfied, including specifically the requirement that you
> are in the employ of the company at the time of payment. Quarterly bonuses are
> intended to encourage executives and Managing Directors to remain in the
> employment of the company rather than resign for other opportunities. As
> confirmed in Dave Argue's e-mail correspondence with you on December 6, 2016,
> as with all bonuses, you must be employed at the time the bonus is to be paid to be
> considered eligible to receive it.

69.    Upon information and belief, Defendant Harvey was actively involved with

Defendant Little in formulating the response sent to Dr. Fowdur.

70.    Defendant Little knowingly misrepresented Dave Argue's email from six-and-a-

half years earlier to avoid paying Dr. Fowdur amounts he knew were owed to her.

71.    The discretionary bonus that Mr. Little referenced was made pursuant to Dr.

Fowdur's work in a junior role, three promotions before her final role at Secretariat that changed

her title and changed her compensation to a non-discretionary formula. Dr. Fowdur at no point

received any communication, verbal or written, indicating that any alleged compensation forfeiture

policy applied to her new positions.

72.    As discussed in Paragraphs 35-41, 48-51, and 57 herein, when EI and Secretariat

offered Dr. Fowdur a contract containing a clause requiring forfeiture of earned but unpaid

compensation, she declined to accept it. Other Principals were offered and similarly rejected this

clause. Defendants now attempt to apply to Dr. Fowdur conditions of employment that she

explicitly rejected and that Defendants are well aware do not apply to her.

73.    As discussed in Paragraph 57 herein, Mr. Little admitted to Dr. Fowdur in June

2023 that he was aware that Dr. Fowdur did not have an employment contract, let alone a contract

wherein she was made aware of and accepted any forfeiture of her formula-based compensation.

Dr. Fowdur is also aware that, in the past, EI paid other departing older white male Principals amounts owed after separation.

74.     Despite the fact that Defendant Little knew that there were no contractual agreements between Dr. Fowdur and Secretariat allowing Secretariat to withhold payment, and despite Defendant Harvey's May 18 message implying that Secretariat was a place where employees would receive what was promised, Dr. Fowdur was not paid the amount due to her on or before September 30, 2023.

## COUNT I
### (Withholding of Wages in Violation of D.C. Code Ann. § 32-1301 *et seq.*)

*(Against all Defendants)*

75.     Dr. Fowdur hereby incorporates the allegations set forth in Paragraphs 1-74 as though fully alleged herein.

76.     Secretariat is, and at all relevant times was, an "Employer" under the DCWPCL, D.C. Code Ann. § 32-1301, because it employed individuals within the District of Columbia.

77.     Donald Harvey is, and at all relevant times was, an "Employer" under the DCWPCL because, per the definition of employer under the FLSA (29 U.S.C.A. § 203(d)), he acted directly or indirectly in the interest of Secretariat in relation to Dr. Fowdur and "the DCWPCL is to be construed consistently with the FLSA." *Ventura v. Bebo Foods*, Inc., 738 F. Supp. 2d 1, 5 (D.D.C. 2010).

78.     John Little is, and at all relevant times was, an "Employer" under the DCWPCL because, per the definition of employer under the FLSA (29 U.S.C.A. § 203(d)), he acted directly or indirectly in the interest of Secretariat in relation to Dr. Fowdur and "the DCWPCL is to be construed consistently with the FLSA." *Ventura v. Bebo Foods*, Inc., 738 F. Supp. 2d 1, 5 (D.D.C. 2010).

79.     Dr. Fowdur was, at all relevant times, an "Employee" pursuant to D.C. Code Ann. § 32-1301 because she was suffered or permitted to work by Secretariat.

80.     Under D.C. Code Ann. § 32-301(3), ""Wages" means all monetary compensation after lawful deductions, owed by an employer, whether the amount owed is determined on a time, task, piece, commission, or other basis of calculation…" and includes:

> (A) Bonus;
> (B) Commission;
> (C) Fringe benefits paid in cash;
> (D) Overtime premium; and
> (E) Other remuneration promised or owed:
>> (i) Pursuant to a contract for employment, whether written or oral;
>> (ii) Pursuant to a contract between an employer and another person or entity; or
>> (iii) Pursuant to District or federal law.

81.     As plainly stated in the D.C. Code, Dr. Fowdur's formula-based compensation at issue constitute "wage[s]." pursuant to D.C. Code Ann. § 32-1301.

82.     Dr. Fowdur has done all work necessary to receive her wages.

83.     Under the DCWPCL, Dr. Fowdur was entitled to payment of those wages upon her separation from Secretariat.

84.     Despite Dr. Fowdur's demand, Secretariat failed to pay Dr. Fowdur wages due to her on or about June 30, 2023, and stated that it would not pay additional wages due Dr. Fowdur on or about September 30, 2023.

85.     In refusing to pay compensation promised to Dr. Fowdur, Secretariat failed to pay and willfully and knowingly withheld wages owed to Dr. Fowdur for work performed in violation of D.C. Code Ann. § 32-1303.

86.    In violating D.C. Code Ann. § 32-1303, Secretariat is liable to Dr. Fowdur for the unpaid amount of wages, liquidated damages in an amount equal to treble the unpaid wages, attorneys' fees, statutory penalties, and such other relief as the Court deems necessary.

**WHEREFORE**, Dr. Fowdur respectfully requests that she be awarded the following relief against Secretariat:

    a.    Plaintiff's unpaid wages in an exact amount in excess of $75,000 due to her pursuant to DC Code Ann. § 32-1308(a)(1)(A)(i).

    b.    Liquidated damages equal to three times her unpaid wages pursuant to DC Code Ann. § 32-1303(a)(1)(A)(ii).

    c.    Statutory Penalties pursuant to DC Code Ann. § 32-1308(a)(1)(A)(iii).

    d.    Reasonable attorneys' fees as well as the costs of this action pursuant to DC Code Ann. § 32-1308;

    e.    Pre- and post-judgment interest; and,

    f.    Any other such relief that the Court may deem just and equitable.

## COUNT II
## Breach of Contract

*(Against Defendant Secretariat)*

87.    Dr. Fowdur hereby incorporates the allegations set forth in Paragraphs 1-86 as though fully alleged herein.

88.    Over the course of her employment, Dr. Fowdur and Secretariat entered into agreements by which Dr. Fowdur would perform services for Secretariat and in return Secretariat would pay Dr. Fowdur agreed-upon amounts as compensation for those services.

89.    Those agreements included both oral agreements and agreements based on writings between the parties.

90.    Those agreements are memorialized in writings referenced in Paragraphs 14, 17--33 above.

91.    The agreements between the parties related to compensation Dr. Fowdur was to have received in exchange for services performed for Secretariat constitute enforceable contracts.

92.    Secretariat breached their Contracts with Dr. Fowdur by refusing to pay her earned wages.

93.    As a result of Secretariat's breach, Dr. Fowdur has suffered damages.

**WHEREFORE**, Dr. Fowdur respectfully requests that she be awarded the following relief against Secretariat:

a.    Plaintiff's unpaid wages in an amount in excess of $75,000.

b.    Pre and Post-Judgment interest.

## COUNT III
## Unjust Enrichment

*(Against Defendant Secretariat)*

94.    Dr. Fowdur hereby incorporates the allegations set forth in Paragraphs 1-93 as though fully alleged herein.

95.    Secretariat offered to pay Dr. Fowdur compensation in exchange for Dr. Fowdur providing services for Secretariat.

96.    That compensation was to be determined using specific formulas created by Secretariat and included quarterly payment of compensation earned pursuant to those formulas.

97.    Dr. Fowdur performed the agreed-upon services for Secretariat.

98.    Secretariat accepted those services, billed Secretariat clients for the services, received payment for the services Dr. Fowdur performed, and knew or should have known that Dr. Fowdur expected to be paid the agreed-upon compensation for those performed services.

99.     Secretariat refused to pay Dr. Fowdur amounts owing as calculated using the Secretariat formulas.

100.    It would be inequitable to allow Secretariat to retain the value of the services performed by Dr. Fowdur without remitting payment for those services to Dr. Fowdur.

**WHEREFORE**, Dr. Fowdur respectfully requests that she be awarded the following relief against Secretariat:

      a.   Plaintiff's unpaid wages in exact amount in excess of $75,000.

      b.   Pre and Post-Judgment interest.

## COUNT IV
### Promissory Estoppel

*(Against Defendant Secretariat)*

101.    Dr. Fowdur hereby incorporates the allegations set forth in Paragraphs 1-100 as though fully alleged herein.

102.    Secretariat made promises to Dr. Fowdur regarding the compensation she would receive if she provided services to Secretariat.

103.    Secretariat expected that such promises would induce Dr. Fowdur to provide services for Secretariat.

104.    Secretariat's promises did induce Dr. Fowdur to perform services for Secretariat.

105.    Secretariat failed to provide the promised compensation to Dr. Fowdur.

106.    Dr. Fowdur relied on Secretariat's promises to her detriment and has been damaged as a result.

107.    Injustice can only be avoided by enforcing Secretariat's promises to Dr. Fowdur.

**WHEREFORE**, Dr. Fowdur respectfully requests that she be awarded the following relief against Secretariat:

    a.   Plaintiff's unpaid wages in an amount in excess of $75,000.

    b.   Pre and Post-Judgment interest.


## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all counts.


Respectfully Submitted,


_____/s/_____
Ben S. Barlow, Esq. (DC Bar # 497795)
Smithey Law Group LLC
706 Giddings Avenue, Suite 200
Annapolis, MD 21401
(410) 919-2990 (Phone)
(410) 280-1602 (Facsimile)
ben.barlow@smitheylaw.com

Date: November 9, 2023